Case 21-3404 Von Davis v. Charlotte Jenkins Oral Argument, 30 minutes per side Mr. Berman for the appellant May it please the Court My name is Jordan Berman for Appellant Von Clark Davis I'd like to reserve 5 minutes for rebuttal Fine I plan to focus on Mr. Davis' first argument today and to leave the other claims to the brief unless this Court has specific questions Mr. Davis waived his fundamental right to a jury trial in exchange for an express written promise to be tried and sentenced by three specific named judges After this Court reversed his previous death sentence as unconstitutional those three named judges were no longer available for his resentencing As a result, Mr. Davis asked to be released from his waiver but the state opposed those efforts and instead forced him to be resentenced before three different judges in violation of the waiver's explicit terms The Supreme Court in Santabello and its progeny clearly established that it is a due process violation for the state to breach the promises that induced a defendant to waive his fundamental rights Because that is exactly what happened to Mr. Davis he is entitled to release There are three reasons that Mr. Davis should prevail on this claim There's no dispute on the facts The law is clear and the Ohio Supreme Court decision is not entitled to deference On the facts, there is no dispute that the right to a jury trial is a fundamental right under Duncan v. Louisiana There is no dispute that this is the right that Mr. Davis waived in exchange for these three named judges There hasn't even been a dispute that the agreement was breached The only dispute in this litigation is did this breach violate Mr. Davis's constitutional rights? And under Santabello and Mopry and Puckett from the Supreme Court, the answer is clearly yes He waived a fundamental right and the promises to induce that waiver were breached So- Does it matter that the promises were not made by the prosecution? It does not matter that the promises were not made by the prosecution For example, at Santabello itself it was a different prosecutor and it was inadvertent and Mopry clarified that Santabello itself rejected the relevance of prosecutorial culpability So the focus of the claims isn't on how it was breached or who breached it but on the fact of the breach In U.S. v. Taylor, for example which is an unpublished decision from this court in 2001 this court found that the prosecutor did not breach but that the district court did because the plea agreement said that the district court was bound to recommend or to impose a sentence within a certain range and if it didn't want to do that then it didn't need to accept the agreement in that case And so similarly here, if the court didn't want to provide those three judges it didn't have to accept the agreement You know, Mr. Berman, I'm finding this a little bit hard to swallow in terms of I don't think, it doesn't seem to me that a defendant ever has a right to a particular judge to handle his particular matter, whatever it is And I understand that your client bargained for and obtained a listing of the panel in the waiver but I hardly see how that could be deemed to be binding on the state for all time You know, judges change all the time A defendant in federal court comes in and might expect the judge to be the same the next time and the judge's name might be all over the papers of the plea and everything but if that judge is ill or dies or the case is transferred somebody else is gonna be there Seems like it's about a process, not an individual And yet your argument seems based on individual judges being present in perpetuity Well, you're right that in the ordinary courts of events there is no right to a specific judge But in this case, because that is what he bargained for it becomes a due process right So in Santabella, ordinarily there is no due process right to have the prosecutor refrain from making a sentencing recommendation but it becomes the due process right when that is what he bargained for And, you know, it is a tenant of contract law You know, these cases view it as, you know contract law layered over with institutional Why not view it as an agreement to a particular process? You know, he's giving up his right to a jury trial What the state is providing him is a process of having the three judge panel and he obtained that process throughout Well, again, if he were just waiving for He obtained that process three times in fact Right, and the first two times he had the panel so that's why this issue comes up for the first time here There's language in the Ohio revised code for waiving a jury and agreeing to a three judge panel Mr. Davis specifically deviated from that language to add the names of these three judges This court, when it previously reversed Mr. Davis' sentence questioned the wisdom of holding him to a jury waiver which was at that point, 25 years old The specific three judge issue hadn't come up yet at that point But this is, but that is exactly why it's coming up here It doesn't happen that often that cases reversed that far in the future And when three judges are not available when the bargain is no longer possible to perform the cases are clear that, you know, this is not this doesn't fall on the defendant, it falls on the state that an impossibility to perform an unfulfillable promise goes in the defendant's favor It basically, it rescinds the contract So either he could go back and have specific performance which is not available here because these three judges aren't there or the contract could be rescinded in which case what he's asking for is a sentencing jury I mean, technically rescinding the jury waiver would provide a jury at both phases but that's not even what he's asking for I would point to Brown versus Poole from the Ninth Circuit in our brief which has a lot of specific language about the prosecutor promised something that couldn't be fulfilled and that's why he's granted habeas relief It's not, you know, it is part of the contract and if the state didn't want to be held to it it shouldn't have accepted the agreement What should be our standard of review on this claim? Are we reviewing a decision by the Ohio Supreme Court with under AEDPA or what? Well, we're not under AEDPA because the Ohio Supreme Court either inadvertently overlooked this claim or decided it contrary to clearly established federal law So the question that the Ohio Supreme Court analyzed when it denied relief was whether there is a constitutional right to a jury at sentencing, even in capital cases and that is not the test here Sanabella instructs us to look at what was the right that was waived in the agreement and the right that was waived here was the fundamental right to a jury at trial And so Mr. Davis's request for a sentencing jury was just a potential remedy for that breach but by focusing on that question, the court didn't answer, you know, whether the breach violated his due process rights by holding him to a jury waiver that can no longer be fulfilled And because the court never answered that question it's not entitled to deference So the Ohio Supreme Court apparently was applying this Spaziano case? That's correct And you're saying that that is in conflict with the actual governing cases, Ring and Friendly, I guess Yeah, so I wanna be clear they did rely on overruled case law and that is something that we wanted to point out in our brief as, you know, another example of why they're not entitled to deference but Spaziano and Ring are all about if there is a right to a jury at sentencing and the answer to that does not affect one way or another if Mr. Davis is entitled to relief here Again, he waived the right to a jury at trial and there's no debate that that is a fundamental right So that is more of a secondary issue I take it Mr. Berman in terms of this back to this jury waiver issue we don't even get to the issue of prejudice then under your argument That's right, so under Santabello these violations are not subject to a harmless error analysis In that case, the trial court said, you know, the prosecutor made a recommendation when it promised it wouldn't and the trial court said, doesn't matter what the prosecutor did or didn't recommend it wouldn't have affected the sentence anyway and Santabello found that that didn't matter the Supreme Court reversed anyway It's more an issue of fundamental fairness and the integrity of judicial proceedings that the state should be held to the promises that are made in waiving fundamental rights So I guess back to this issue of let's say this third resentencing So I guess practically speaking the matter would go back to the state court and the arguments that Mr. Davis would just really begin I knew he'd have a choice once again of selecting the process of selecting three judges specifically who could sit on this case or he could select or invoke his right to a jury trial Is that right? Would the process start over again? Well, first I want to make clear that that's we're not asking this court to decide what will happen there I guess I'm just asking, I'm just wondering how it would work Yeah, I mean, that is something that would have to be worked out in state court So those are possibilities that there's a new panel that there's a sentencing jury the state took the position that he can't have a sentencing jury without also having a jury at the guilt phase And if that's something they want to work out there they're welcome to as well But yeah, all we're asking here is that the sentence be vacated and it be sent back for resentencing and compliance with the constitution Well, but is part of your claim that in order to have it be resentencing in accordance with the constitution Mr. Davis has to have the right to a jury to decide the sentence Not necessarily Again, we said that's one particular remedy That's the remedy that Mr. Davis proposed in state court was to have a jury at sentencing So, again, the constitutional right at issue is the one he waived at trial So we're not saying that he has a right to any particular remedy but that is the one that he proposed as acceptable and one of the options that could be worked out in state Is there another opportunity to negotiate about which three judges might be on his panel? That's also another possibility Mr. Davis certainly never would have waived jury for the panel that he had at least for at least one of the judges was the prosecutor who tried to sentence Mr. Davis's nephew to death And so, you know, Mr. Davis was certainly harmed by being kept in it to the extent that that's even relevant Yeah, sure. But yes, another possibility would be, you know to work out a three judge panel Is there any other possibility? Sorry. I'm sorry, go ahead Is there any other possibility than those two? A jury or agreed upon three judge panel? Certainly if death is taken off the table then there isn't a penalty phase, you know And again, that wouldn't exactly be, you know it would be a different judge at that point but certainly that's another possibility that could be negotiated If death is taken off the table then there would need to be a sentence Who would do the sentence? Would that be a single judge or would that be? Yes, it goes to a single judge if it's not a capital case And how old is your client now? He's 77 And are there any other constraints on Ohio sentencing in terms of, could a sentence be life without parole? I don't believe it could be life without parole because it was at the time that he was convicted that that sentence didn't exist. So I believe 30 to life It would be life parole at 30 years. Is that the, was that the maximum sentence other than death at that time? Yes. And as I mentioned, he is 76. Yes, that was the maximum at that time. Right. So, so more than 30 years has happened since the 80s, the 84 conviction, like 84. So he would presumably be eligible now. Yeah. I mean, These are all hypotheticals. Yeah. Again, like no, the state certainly hasn't agreed to drop death. And so, yes, this is very hypothetical at this point, but yes. And you know, there was a lot of dispute at trial about the fact that, you know, someone convicted for this type of crime is very unlikely to ever get parole to the extent that that is relevant here. But yes, 30 to life would be, would be the maximum. So you mentioned the one judge, and I know you wanted to focus on the, on the one argument that you've made, but the one judge Nastov, who had been the prosecutor seeking the death penalty in the case involving the defendant here, his nephew. The council said, apparently the trial, the council that was arguing in front of that three judge panel with Nastov on it said that they knew that Nastov had this situation, but had decided not to raise it. So you're raising that issue as an IAC claim. Yes. It's as an IAC claim. So yeah. And in some ways it is more ineffective that they knew about it and didn't challenge it. We cite McKernan versus superintendent Smithfield, SCI in our brief, which is another case from the third circuit where the judge was overly concerned about internet comments that the victim's family was making during the trial. And the council certainly knew about it there and dissuaded the defendant from seeking accusal. Here, all the more so they didn't even consult with their defendant. The defendant found out in the courtroom on that day that they weren't seeking recusal. And so in that case, just as here, it's a basis for habeas relief. And I understand the Ohio Court of Appeals said it was a strategic decision. So why should we not defer to that? Well, because there is nothing in the record to indicate that it is a strategic decision other than the council saying with no reasoning that they knew of the conflict. There has not been discovery granted on this claim. And they never told the defendant their reasons for doing so. So right now it's still an open question. They just, the court just assumed that it was a strategic decision, but didn't have any actual, there was no development of the record to actually support that conclusion. So is your claim really that there needs to be an evidentiary hearing on that as opposed to that we could resolve it? I mean, we think that there is enough on the record that you could resolve this. There was the same mitigation that the prosecutor previously tried to discredit or the judge previously tried to discredit when he was a prosecutor. He called Mr. Davis's nephew a liar. In this case, the panel gave little or no weight to the relevant mitigation evidence about Mr. Davis's dysfunctional childhood. They never saw consent from their client. The judge may be seeking to validate his previous case where he did not achieve a death sentence against the nephew, but yeah. But if the court finds that there is not enough evidence to grant relief on that claim, then yes, another option is an evidentiary hearing. But my understanding was you're wanting us to call this really a per se structural violation to have a judge such as Nasdaq on the panel. Am I wrong about that? Yeah, it's an ineffective assistance of counsel claim. So we do have to show prejudice. We're not making a claim that there was a due process violation that required the judge's recusal. The claim that we're making is that there was ineffective assistance of counsel because there were good grounds to request a discretionary recusal and that Mr. Davis was prejudiced by counsel failing to do so. And then having this panel that within an hour sentenced him to death. There are no further questions on that. I'll go back to the first claim for a moment. I see my time is running low. There is no question that the identity of the three judges was an integral part of the contract. So, beyond the language itself, deviating from the boilerplate language and the Ohio revised code, there was also the motion that Mr. Davis filed before he waived jury seeking notice of the identity of the three judge panel. And he argued in that motion that it was critical to his decision whether to waive jury that he know the identity of the panel. And then finally, there was the colloquy in which he was again told. So, well, first of all, in response to that motion, he was told for the record, it would be these three judges. And then in the colloquy, he was again promised, you know who the judges are, they're in this form here and named three judges. So, in this way, it's very unlike the case that the warden relies on, Sinostad v. Burge, in which the language of the waiver just said a judge of the court. And this court found that they merely assumed that they were getting a particular judge, but that they were never led to believe. Here, Mr. Davis was explicitly repeatedly promised that it would be these three particular judges at the time that he made this waiver. If there's no further questions, I'll reserve the remainder of my time for rebuttal. That's fine, thank you. Ms. Bosch. Thank you, Your Honor. May it please the court. My name is Jana Bosch and I represent the state of Ohio. So, as my friend on the other side spent a lot of time talking about the jury waiver argument, I figure I'll start there. I do intend to address the rest of the arguments and if there aren't any questions on them, then I'll just be very brief. But I'll do that after we talk about this main argument. First of all, Judge Moore, you asked a question that really got to the heart of why this claim is not going to prevail. And you asked, does it matter that the promise wasn't made by prosecution? And the answer is, it does. And there's two reasons. So, the first reason is that there is no constitutional right to a jury sentencing. We have to start there. I know there are these two different angles that my friend has talked about, but the first angle is just, there is no constitutional right to a jury sentencing and Hearst didn't change that. So, when it comes- What about Apprendi and Ring? Right, so those established that there's a constitutional right to have a jury determine any fact that's necessary to raise the possible sentence above the statutory maximum. So, if you hear there's no Apprendi or Ring problem because you have the fact finder, which was, he did elect to have three judges, but for all intents and purposes, it was the fact finder constitutionally finding the specifications that made him eligible for the death penalty. So, there is no Apprendi problem. There is no Ring problem. The question is whether the sentencing part where you weigh the aggravating and the mitigating circumstances, if the constitution required that to go to a jury or to go to a chosen fact finder, and the answer is no. So, once you have that off the table, then you can turn to the second aspect my friend talked about, where he says that Santabello, based on Santabello, there's this constitutional right to have his choice to have these three judges sentence him respected, and that by not having those three judges sentence him, his agreement was breached. In order for this claim to prevail, because we are under the AEDPA standard, there needs to be a Supreme Court precedent that squarely addresses the issue that's presented here. And there are three reasons that Santabello does not squarely address this issue. The first one is that this wasn't an exchange. This was an exercise of a statutory right. It was also referred to in the hearings my friend referred to as an election. He could elect to have three judges try him if he thought that that would be better for whatever reason, more strategic, and that was his right. It wasn't an exchange that he had with the prosecutor where the state would receive one thing and he would receive something in return. And then, you know, a la contract, if one person doesn't receive what they agreed to, then the contract was broken. That's not the situation. If you look on the waiver form, it's not signed by the prosecution. Simple reason. Does that really matter in the sense that it wasn't accepted by the judge? So there could be an argument made, and I don't think it's a particularly strong argument, but there could be an argument made that this should be seen as like a plea agreement with the court. Again, I don't think that's the way it works in the statute. But the point is that to make that argument is to say that we would be extending Santabello to a slightly new situation. And that's exactly what the Supreme Court has said that this court cannot do on habeas review under AEDPA is to take a precedent that addresses one situation, in this case, a plea agreement with a prosecutor, and to take that and logically stretch it out to another situation because the court thinks it would apply and that they would apply it if this were on direct review. That's something that- But you're assuming that we're under AEDPA for this question. What's the rationale for saying that AEDPA applies here? Yeah, so the state court did address the argument on the merits. My friend agrees with that much. Now, what he says is where it addressed a portion of my argument, it didn't address this aspect of the argument, the Santabello argument. So there's really two ways that the court could look at this. The first one is, my friend didn't really present the Santabello argument before the state court. If you go back and you look at the filings, he presented the core of the claim being that there's this constitutional right, it has to do with the jury, it has to do with sentencing, and this was violated. He based it on Duncan back then, and it was more of a fundamental fairness argument. So you could see that as being the core of the claim, and then you could say, well, this Santabello argument is sort of a growth out from that, and I don't begrudge my friend for rowing the argument in that way. As long as we see the core as being this, the constitution required me to be sentenced by a jury. As long as you see that as the core, then this growth is just another way of expressing that same core. If that's the way that the court sees the argument, then we're under AEDPA deference because the court did address the merits of the claim as they were presented to it. And even, especially when you consider that under AEDPA, the court, the state court, if it says it's addressing it on the merits, doesn't even need to have an opinion. It just needs to have said, this is addressed on the merits. This is Harrington versus Richter. So even if that's how we see it, then the core of the claim is the constitution required a jury to sentence me, and then this is just another flavor of that claim. It's just another gloss that you could put on in a way that you could express it. In that case, we apply AEDPA because the state court did address the core of this claim on the merits. And the fact that it didn't address this particular claim, even putting aside the fact that it wasn't presented this way, it's still addressed on the merits. The other way the court could see this is this is an entirely new claim. The Duncan claim that was made before was about fundamental fairness and difference of poles. This Sanibello claim is entirely separate. And if that's the way the court chooses to see it, then it would be procedurally defaulted because this claim was never presented before the state court. It was based on Duncan. Like I said, if you go back and you review the filings that were before the state court, and when it reviewed this, it wasn't a Sanibello claim, it was a Duncan claim. So again, I read my friend's argument to just be another outgrowth of a way of expressing that. I do that because I think that we can just address this under AEDPA and address it fairly head on. But if the court does see this as being a totally different argument, then it would be procedurally defaulted because it wasn't presented. So if that answers. Well, yeah, it answers the question for my purposes. So I just wanna sort of ratchet it to be down a little bit. Let's say if we would just put AEDPA aside, let's just assume there's no procedural default. You can certainly envision a scenario where a defendant agrees to sentencing before three judges that he specifically identifies for whatever reason. He or she may believe that those three judges are maybe more lenient on an issue that's important to him. And that he would not have agreed to proceeding before three judges who were viewed as, let's say, pro death penalty, let's just put it that way. And so if we look at this from the perspective of a contract as your friend on the other side has said, and we put AEDPA aside, your argument essentially, this is really a new argument and it would be procedurally defaulted. Is that what you're saying? Because it does seem to make sense in this most sort of basic element that I want these three judges because I think they're gonna be fair to me. I don't want these other three judges because I think that they're gonna be tougher or less fair or whatever it may be. Does that make sense? I think so. Let me try to answer. And then if there's some, then we can clarify more. So to be clear, I wanna be very clear about where this procedural default comment that I made comes in. My friend on the other side has made a statement along the lines of the state court should not receive AEDPA deference because there's this one argument that I made and then this totally separate argument that I made and it addressed one argument, but not the other. And my answer to that is these cannot be considered totally separate arguments because if they were, he never presented the second one. So then that would be procedurally defaulted. So what I'm saying is the way that we have chosen to read the brief is that this is a new way of expressing the same basic argument and which we have consistently responded to in the same basic way. And so reading those as coming from the same core argument. Now, when you do that, you preserve the second argument from a procedural default, but you also have to remain under AEDPA deference. So you can't split them apart for one purpose and sew them together for another purpose. You have to be the same. Does that answer your question completely? Yeah, it does. Thank you. Okay. So I wanted to go ahead and talk about the other two. Remember I said there are three reasons that Santa Bella doesn't squarely address this claim. So the first one is this isn't an exchange between a prosecutor and a person, a defendant like Santa Bella was. So, sorry. So the first one is it's not an exchange. The second one is it's not a prosecutor, which gets to what you were saying, Judge Moore. Does it matter that it's not a prosecution? It does. And the reason is because we're under AEDPA and AEDPA says, listen, there needs to be a Supreme Court case that squarely addresses the question presented. The fact that that's not an exchange and it's not a prosecutor, it's a court, those are meaningful differences. Those are things that would require this court to extend Santa Bella out in order to make the conclusion that this was improper. Well, that's exactly what the Supreme Court has said in Lopez and many, many other cases that this court is not allowed to do under AEDPA. And finally, I would just add- Suppose that we did not agree that AEDPA deference should apply. And we looked at this to know, should we not say that there is a violation? So you're asking, so if we take the- Just dealing with the merits of the question, assuming that AEDPA deference under no vote review. Right, so I would say there's no constitutional right violated here because there's no constitutional right to jury sentencing. And so when you look at it that way, any issues that you might have with the waiver as it pertains to the sentencing, well, there is no jury right to sentencing that could be transgressed. So there is no error there. Insofar as you would want to isolate the waiver language sort of in the Santabello-esque way and say, well, let's look at this language and let's look for a subjective expectation that this person would be re-sentenced by the same judges over and over again, no matter how many times he came back. I think honestly what Judge Gibbons said sort of addresses that in a common sense way. When someone executes a jury waiver, even if they have a subjective expectation that this is not just gonna be for the trial, it's also gonna be for sentencing, just logic and intuition tells us it's not gonna necessarily be the same three judges if you come back three decades later on a remand. Like it's just not reasonable to read it that way. So I think that there are lots of reasons even not under AEDPA. I guess I don't understand why you can say it's not reasonable. I'm attempting to put myself in the shoes of the defendant. He thought he was getting a trial, including sentencing before three particular judges. I don't think anybody expected it would be 25 years later and he would be being re-sentenced, but he had expectations and that was a deal that wasn't signed by the prosecutor, but my understanding was it was prepared by the prosecutor's office and it was signed by the judge on the court. So you could make the argument that it was an even stronger kind of promise. It was the court promise that those three judges would be there. So a couple of responses. First of all, there was this note about the prosecution's office preparing the waiver, even though they didn't sign it. I don't know that there's a lot of significance to vest in that. This is 1984. From my review of the transcript, there was a discussion where the prosecution said, we really should put this in writing and memorialize it both in writing and on the record. The judge said, well, that sounds great. Do you wanna type it up for us? And he said, well, sure. And then the defense counsel said, well, I have no objection to that. So then this as a ministerial task, typed it up. So I don't think it's this situation where, oh, it's like a plea agreement, which is like a contract where one party- No, but it's a contract between the defendant and the judge. Right, and so then to move on to the second thing, this idea that it's a contract between the defendant and the court. Again, Judge Gibbons, when you mentioned that this is a process and that people are opting for a certain process, I think that's absolutely right. And also I would note that the process is what was the statutory election available. There was no statutory provision saying, well, you should get to pick your judges. You can elect which judges you want. When he says, and as he does in his form, pursuant to this law, I'm electing to be tried by three judges. And the three judges are these people. Well, the law doesn't give him the right to choose those three judges. The law gave him the right to elect, to have a panel of three judges. And that's exactly what he did. So I'm not sure that there's a really strong reason that anyone at the time would have said, well, you're exercising your right to elect a particular three judges, because it didn't exist. There was no such right. I think- He was giving up his right to a jury trial of both penalty and guilt phase. And he's giving it up in exchange for a three judge panel where the three judges are known and identified. He may not have had a right to that, but he explicitly gave up his right to a jury in exchange for that. And the court signed off on it. So I think there's been a lot of use of the words like exchange and this deal with whether it's a prosecutor or a court. I think I really have to push back against that because when you talk about exchange in this context, in the criminal context, a lot of times it's in plea bargaining. That's where we're getting a lot of the sort of touch points for this. The reason we call it an exchange is because it really is. The state gives up the right to pursue certain charges or it decides to dismiss them. And then in exchange, the defendant says that he will plead guilty for certain things. So you really do have a this for that. And that's what it means to exchange. When someone lists three judges in their jury waiver and says, and now we're saying, well, this is an exchange that doesn't really crack with the idea of exchange as we use it in any other context, because it's not as if the state or even the court is giving up something in return for him executing his jury waiver. Quite frankly, it was just his statutory right. He's exercising that right. Nobody begrudges him that. Nobody offered him anything in exchange for doing that. Frankly, the state didn't benefit at all because they're still going to be trying the case just whether it's 12 people or it's a panel of three judges. So this idea of talking about it as an exchange, I don't think really tracks with what was happening there. So I do have to push back against that. And another reason that this really isn't tracking with the controlling precedent we have from the Supreme Court. You look at Santabello, the emphasis is, where is it? The emphasis is, this is an exchange. You can't have the state get what it bargained for, turn around and tell the defendant, you can't have what you bargained for. That's fundamentally not fair. Why? Because that's an exchange and it was expressly given and then the state violated its own promises. That's not what we have here. So Santabello doesn't squarely apply. And even if Judge Moore, you're not totally convinced about the arguments that we would make on de novo review, that's okay. HEDPA isn't allowing a de novo review here. HEDPA is requiring the court to apply only the clearly established law. Even if there is Sixth Circuit precedent that very eloquently explains why the plea bargaining principles would apply here, that's still not enough under HEDPA. We need to see that on-point case. The best that the defense can offer is the Santabello right to the plea bargaining. And for the three reasons I've given, it's just not close enough. So under your approach to the case, let's take a hypothetical. Suppose that the agreement was made that the particular judge signed off that the three judges would be A, B, and C. And the defendant signed that, the prosecutor signed that, the judge signed that. And then suppose a couple of weeks later, I'm making up a hypothetical. Suppose the judge says, ha ha, I really don't wanna be on this case at all. My friend who believes firmly in the death penalty is gonna be the third judge. Would there be any constitutional recourse that the defendant would have in that situation? So, and are you talking about on direct appeal or are you saying if this- I'm just talking about the merits, just trying to get to the heart of fundamental fairness. That seems to me to be fundamentally unfair to lure a defendant into saying, oh yeah, you can have A, B, and C as your judges. And then a week or two later say, aha, we were just kidding. It's not gonna be A, cause he doesn't wanna be on it. Instead it's gonna be this violently pro-death penalty person that I make- Right. So I think that really in giving the hypothetical, you've touched on the reason that it really is bothersome is that because you have this element of the court choosing to intentionally lure somebody in and then intentionally breaking the promise, which of course, obviously we know that's not the case here, but that's the point of having a hypothetical. But I think that you've sort of touched on why you might draw from due process principles if you were directly reviewing that and say, something here seems really wrong. And then you would have the freedom to look at different court precedents, to cobble those together and say, these establish a principle, even though this is honestly a very strange case and doesn't happen a lot, we could take these principles, we could apply them and say, for these reasons, this seems to be a violation of these due process principles when we take these broader principles and we apply them down. Now, the problem is, if you were, and this is why I was kind of trying to clarify with your hypothetical. If you were to take your hypothetical and put it under ENPA, you're still gonna have the requirement where you're gonna need a Supreme Court precedent that squarely addresses the question at hand. And that says that that's a violation of some due process principle. And like I said, with the Supreme Court under Lopez, under Nevada versus Jackson and Wright versus Van Patten and just case after case, this court is not permitted to take broad legal principles like constructive absence or adequate notice or the right to present evidence on credibility and to take those and dive down into a specific application and say, well, because the state court didn't apply this specific way of expressing this idea, that means it violated clearly established federal law as determined by the Supreme Court, even if the circuit court precedents saying that those things violate the constitution were applying those broader principles from Supreme Court cases. So hopefully that answers your hypothetical completely. If not, I can clarify a little bit more. I hear your answer. Okay, fair enough. If there are no further questions on jury waiver, I would like to just touch on the other points, but I don't wanna cut off any questions on jury waiver if there are. So I'll just quickly talk about the other four claims. So first of all, we have the ineffective assistance of counsel and failure to bring up this letter from one of Davis's friends about the first murder. As we stated in our brief, the time to raise this was after the most recent sentencing. And the reason for that is that a claim about ineffective assistance of counsel is a claim that a particular set of counsel was ineffective in a particular case. The previous case where Davis raised this claim, this was the, if you're following the numbers, it's Davis six. If you're not, that's fine. It's just the appeal from the first state collateral proceeding. When he raised it previously, it was about the first resentencing. And it was about that counsel and what they did in that circumstance. Now he has a new claim, which is my counsel in 2009, different counsel, different circumstance, different evidence, they were ineffective for a similar reason. That is a new claim because it relates to the 2009 sentencing and needed to be raised after the 2009 sentencing. This is just a basic understanding of the way that the claim of ineffective assistance of counsel relates to the hearing that the assistance was allegedly. And your position is that it was not raised then after the 2007. Right, so the fact that it wasn't raised after the, the fact that it hasn't been raised since it was raised in regard to the first resentencing, I don't believe is contested. It's just that Davis argues that that was sufficient to fairly present it. And then our response is that's not sufficient because that was an argument about the first resentencing. Now we're looking at the second resentencing. So it would have had to be presented again. If there are no questions on that, moving to the ineffective assistance of counsel on the recusal claim. This was addressed by the second state collateral court. It said that this was a strategic decision not to seek recusal of this particular judge. What could be the strategic reason if you were hypothesizing what could be a reason? Yeah, so it very, I mean, it is not intuitively obvious that him having been a prosecutor on this previous case was going to be prejudicing to Davis's case at all. Frankly, counsel might have- Would it be helpful to his case? It could be. I mean, counsel back then in that circumstance may have known Judge Nassof and may have said, you know, this is a particularly astute judge. This is someone who really listens to the evidence, isn't gonna be swayed by the fact that, you know, this person has murdered two people and isn't gonna be emotionally affected by that. Very well may be. This clearly falls within the Strickland wide area of discretion for, or of strategy for trial counsel. And on top of that, obviously, because the state court addressed it on the merits, we're layering on top of that. So the question now is, is there any reasonable argument that counsel satisfied Strickland's deferential standard of broad discretion for strategy? Clearly, I think clearly if there are questions on it, I can obviously answer those, but there is a reasonable argument that this was inside the wide array of discretion. Aren't you basically arguing though that it's almost an irrebuttable presumption that counsel acted strategically? It's hard to rebut, that doesn't make it irrebuttable as a legal matter. I mean, it is a very difficult standard and it's by design. It would be far too easy to overturn the decisions of state courts acting in good faith and trying to implement people's federal rights to be able to nitpick in hindsight, every single thing that counsel could have done a little bit better. Strategy could have just been a little bit better and maybe just maybe that would have made a difference. That it is by design that this is extremely difficult standard to meet. So did the defendant's counsel seek to have an evidentiary hearing on this point in the state court level post-conviction? So I'm not sure about that exactly. I'm not sure. Basic point is that if they wanted to challenge this as an IAC and bring it forth as an IAC claim, they needed to have some kind of evidence to show it wasn't. Well, so that they would be under the Strickland standard. So on, you know, obviously EDPA wouldn't be there because we're already in the state court, but you'd be looking at the Strickland standard. You say, does this fall outside that wide range? I'm not sure in every single circumstance you're going to need outside evidence. Here, I could, I'm honestly not sure. I could see it being argued different ways. I don't think in every single circumstance you have to have outside evidence or you won't be able to present an argument for ineffective assistance if that's what you're asking. Yeah, no, I was just trying to figure out what your bottom line was in terms of why you thought it was supportable to say it was a decision and what kind of evidence your opponents would be able to have that would rebut your- Right, yeah. So the bottom line is there is no reason, there has been no reason presented that would negate the Strickland deferential standard that we have a presumption that something is a trial strategy. On top of that, the EDPA, excuse me, the EDPA deference to the state court's finding that it was strategic, there's just not been a persuasive argument, persuasive evidence to show that those two deferential standards stacked on top of each other that Davis can surmount that bar. If there are no further questions on that one, then I'll quickly talk about the resentencing mitigation claim, another ineffective assistance of counsel claim. In this one, all I just really want to say is my friend on the other side really paints this as just one error after another, just a horribly run resentencing proceeding. On reading the record, that's really frankly not a fair reading. You have Mosser giving testimony that the average parole for aggravated murder is 27 years, making it Davis almost 90 years old before he would be eligible for parole if he were the average defendant, which clearly with a murder in his past is probably- Wait a minute, I thought the trial occurred, the conviction occurred like in 84. So wouldn't he be eligible for parole pretty quickly? So it is a little bit complicated. My understanding is that you have the life and then you'll be eligible for parole after 30 years. There is no eligibility for parole like you were stating earlier. Then there was a second conviction pertaining to firearms, which kind of extended it out a little bit. Bottom line is, to try to clarify it, in 2009, when we were at the second resentencing, when you add all those years up together, you had six and a half years before he was gonna be eligible for parole again. So then the question obviously for everybody there in the sentencing hearing is, what is gonna happen after that six and a half years? Any reasonable panel, any reasonable sentencers thinking, six and a half years and this guy could be out again, what's gonna make that concern go away? Well, Mosser very effectively said, listen, for aggravated murder, you're looking at 27 years on average. And then she went through to talk about all the ways that this guy was so much worse than average, that he maxed out the matrix guideline for seriousness of the offense, that you'd have to have a risk assessment done for any possible parole release. And the majority of all of the board members would have to come together and vote for parole before it could be granted. So- But I thought that the trial, the sentencing council thought that Mosser was going to testify that he would not be released. So he presents, he frames the evidence. He says, listen, you're going to see from this evidence, he's never gonna be paroled. Now- Well, so she doesn't testify he'll be out. He doesn't say the six and a half. That's already out there. So he says, listen, what you're gonna hear from this testimony is, this guy is never gonna get paroled. And then he very reasonably brings in someone to say, his average parole, even if he weren't a double murderer, would be beyond his life expectancy. It would be so far into the future.  not only is he, as an average person, probably really not gonna be paroled, realistically never gonna be paroled because he'd have to live to almost 90 years old. On top of that, he's not the average defendant. He's not the average murderer. He has a murder in his past he committed while he was on parole. And all the majority of the board members would have to look at this and say, yes, this man is safe to reenter society. So Mosser very effectively put forward exactly what prosecution said. Realistically, Davis will never be. And I would just say, then my friend on the other side points and says, well, now that that testimony with Mosser went so terribly, how could anyone ever pull in Dr. Smith to talk about his mental illness? First of all, that assumes that Mosser's testimony went poorly and it didn't. I don't think anybody would walk away from that hearing saying, well, Mosser didn't effectively say anything. She said a lot that was very effective. And then Dr. Smith provided effective testimony about why the defendant was mentally disturbed when he was acting. And that's important mitigation evidence to let the panel know, this isn't someone who committed a murder in cold blood without anything in his past, anything affecting him. Like he had this mental disturbance and that would be mitigating evidence that he presented. I would like to address the last claim, but I have run out of time. So if the panel would like to ask me any questions, I'm happy to, or if you want me to say a few quick sentences, but otherwise I will sit down. I think we can rely on your briefs. Thank you. Rebuttal? Well, I will continue to focus on the first ground relief unless there are specific questions and opposing counsel raised a lot of points that I want to respond to, especially because they were not raised in the warden's brief. They were raised for the first time at oral argument. So first of all, this is not an extension of Santabello or Marbury or Puckett. This is an exact application of those cases. The reason all of those cases say that plea agreements are constitutionally significant is because they constitute waivers of fundamental rights. And it's not me saying that, it is this court saying that in binding precedent, such as U.S. v. Barnes in 2002, or this year in U.S. v. Estrada Gonzalez, Judge Murphy writing for the court said, because the defendant who pleads guilty waives such things as the Sixth Amendment right to a jury trial, the constitution, not just the contract, requires the government to live up to the promises that it uses to induce the defendant to waive these rights. This is not really a plea agreement though, right? Well, it's a waiver of- It's a waiver. I gather it would be a court form used when a defendant waived the right to jury trial. Is that a fair statement? It was not a form. It was something that the prosecutor wrote up. I did look for cases that applied Santabello where there was no- They didn't plead guilty. They only waived jury trial. And I did find a few, such as U.S. v. Coleman in the Ninth Circuit. And all the ones I found either said, this is the same standards under Santabello, or just referred to it as a plea agreement, like Durbin v. Cockrell, which is a Western District of Texas case. So I have not seen any case that found that difference significant. In terms of whether this was fairly presented, the opposing counsel attempts to recharacterize it as a fundamental fairness issue, but I don't see why that isn't an exact Santabello claim. In fact, it's U.S. v. Barnes that used the language fundamental fairness to describe these claims. He didn't cite Santabello in state court, but he did cite the Due Process Clause and the Sixth and Eighth Amendment and said it is because he was not provided the judges that he was promised. And the Ohio Supreme Court recognized that as the claim, even if their constitutional analysis went in a different direction. In terms of Judge Moore's hypothetical, I think Santabello makes very clear that even an inadvertent error still entitles one to relief, that the culpability of the prosecutor doesn't matter. Again, and Marbury reemphasizes that. So there really isn't much of a difference there. And there's not a difference with a different kind of plea agreement in terms of the state receiving a benefit. I think it would be hard to argue there's no benefit to the state when the state doesn't have to conduct voir dire, which can be quite extensive in a capital case. And when the state doesn't have to worry about one holdout juror who doesn't want to sentence to death. And we know that the state thought that there was a benefit here because when Mr. Davis attempted to withdraw from his waiver at resentencing, the state vociferously argued both in response to his motion and at a hearing. In terms of Mr. Davis's subjective understanding about having these three judges, first of all, we don't get there because the language is very clear. He has promised these three judges, but even under his subjective understanding at the time of his waiver, there was no Ohio law provision to impanel a new three judge panel if someone sentenced to death was resentenced. So it likely was the subjective understanding at every one of the time. That whatever happened in the future, there would be this three judge panel. I see if I am almost out of time. So if the state continues to hold Mr. Davis to the 38 year old waiver, the constitution demands that the state meet its written obligations as well. Since it cannot, Mr. Davis is entitled to it. Thank you. Thank you. Thank you both for your argument and the case will be submitted and you may adjourn court. This honorable court is now adjourned.